They testified at length and submitted documents regarding their fear of persecution if they were returned to Bangladesh. The immigration judge made a credibility finding stating that she found their discrepancies in their testimony inconsistent, and also a document that was submitted was altered and for that reason she found them inconsistent, Your Honor. The petitioners claim, Your Honor, that the reasons given for this credibility finding were not specific in cogent as required by the law and ask that this Court assist them in reversing that decision. Your Honor, if we may, with the alteration, alteration bespeaks fraud, and if there's one thing that tends to undermine a claim, which is often based on believing the witnesses and not much of anything else, it's any indication of an attempt to defraud, and I'm, I think you should, why was that discrepancy between the original and the photocopying? What is the innocent explanation for that? Yes, Your Honor. First of all, Your Honor, the — It's not in the record. Excuse me? It's not in the record. Your Honor, it was not admitted into the record. It was admitted for identification purposes only, so I — It's not in part of this record. No, it isn't, Your Honor. But to address the Court's question, Your Honor, the original, which was unaltered, was given to the Immigration Service at the time of the asylum hearing and remained in their possession throughout, Your Honor. What we submitted to the Court subsequently was a copy of that, and, Your Honor, during the time that it was in the possession, which is years in the case of — in most cases of asylum, Your Honor, we have no explanation why there was a difference in the copy, but what was originally submitted to the Court, which was the original document, was not altered. What was the alteration, anyway? It's not an alteration. The immigration judge found that it was illegible. It was some markings, and there was no finding as to what that was. Well, was it the text itself that was altered, or was it a date? No, there was a — It was not determined to be a date, Your Honor. The Court found it illegible and did not inquire further into that. So I'm sorry, just so I understand. So there's an original document. Yes, Your Honor. It is submitted to the — with the application. That's correct. And we don't have that, but it's — It was with the government's file, Your Honor. It remained in their custody. With the government's file. And then your client retained a copy. Yes, Your Honor. And your client's copy shows something that is absent on the original, or vice versa? The government's original has something that — I'm sorry, my copy shows something in addition to what was given to the government originally. Well, it has something that now — that's different from — The original. — how it now appears, the original looks. So there's something written on it. Could be a notation, Your Honor. And what does the original look like? Your Honor, it's a — Does it look erased, or — No, there is nothing on the original, Your Honor, that shows any kind of alteration. It is a blank. As to that section, it was considered it was blank. And the copies that we submitted to the court, because we didn't have the original, had some kind of a written notation, but it was never determined what that was. And on review, Your Honor, I can't determine what that is either. It was just — You don't have it to look at? It's in the record, Your Honor. It is in the record? Yes, it is, Your Honor. And where on the record is it? Your Honor, could I refer to my — I don't — Sure. Thank you. While you're looking, I should say something on behalf of your clients. It is the unusual case where they actually came forward and sought asylum while they were still in lawful status in this country. Yes, Your Honor. It's a rare case. Usually, people overstay their visa and then wait to get caught, and — Yes, Your Honor. I think it's — whatever the outcome of the case, I think it speaks well for them to look for the fact that they did. Are you looking at 147 or 148? Yes, Your Honor, that would be correct. Which is it, 148? It is 148 and 149, Your Honor. Now, where is this alteration? Your Honor, the alteration would be on 149 at the top right-hand corner. So it is a — appears to be a date, right? 922-something.  So that's what this is all about? That's what she made her credibility finding on in part, Your Honor. So I'm sorry, just to get the sequence straight, the one without the date, the one that's now page 148, is the one that's in the government's files? And the original, yes, Your Honor. And how did this copy with the date come to the attention of the immigration judge? Your Honor, they compared what we submitted, because I submitted it not knowing that this was in the record, because I didn't have a copy. And she compared them and saw that they were different.  Well, assuming this to be a date, which it appears to be, is there any particular significance to having the document be on that date rather than a later date? No, Your Honor. It didn't go to anything in the hearing. But what is this? I haven't read the letter. Can you quickly tell me what it is? It's from whom and what? Yes, Your Honor. It was from the political party of Mr. Hoke. And they basically stated that what he did with the party and what he had gone through and that they hope that he's able to find safety in the United States. I take it there was no challenge to the authenticity of it? There wasn't, Your Honor. It was just basically not admitted into evidence because the issue came up as to the difference in the documents. So why wasn't the unaltered original received into evidence? That's a good question, Your Honor. And the court should have had the discretion to do that, but they decided not to. I mean, presumably the inference is if there is an original with the government that shows no alteration at all, and then something is submitted by your client on a copy that has an addition, there's a fairly strong inference that this was added probably by your client subsequent to the submission of the original document and that it was not something that was written there by whoever this is, Abdullah, I can't quite remember the name, Bard. Yes, Your Honor, that would be the inference. This must have been something that was not, that purports to be put there by Abdullah Bard, but in fact wasn't. I think that's the inference. And, you know, I think that's certainly a plausible inference because the original shows no date, right? Yes, Your Honor, the original doesn't. But, Your Honor, as the question is, why would adding that date help or hurt anything? That was my question also, Your Honor. I didn't see that it did help or hurt anything. And you don't have an explanation, and there's no explanation on the record as to how that date got there? None on the record, Your Honor. It was not admitted, and it was left at that. Okay, I think we've explored this issue. Could you discuss the other basis for the dispute? Yes, Your Honor. Your Honor, the immigration judge makes a point about how the testimonies regarding, there were discrepancies in the hiding testimony. And, Your Honor, if you go through the transcript, it's clear that Mr. Hoek was never actually asked any questions about hiding. He volunteered himself, that he hid on one occasion, and that was it. No further questions were asked of him. Regarding Mrs. Hoek's testimony, Your Honor, she was asked specifically, after such a date, did he go and hide? And she said, yes. What about before? Yes. How about on this occasion? Yes. Your Honor, there's no discrepancy because she was never asked the same questions he was asked. They kept on asking her different questions on hiding, and she kept on expanding them in response to the questions.  There may not have been conflicts, but there were what a reasonable fact might be of inconsistency. Was there some omission about one incident, and also the business, failure to mention the business? Your Honor, that's a great question. Your Honor, when we're trying to put a case together, it's not that we're trying to parrot the testimony of one person to another. We're trying to tell the story of the person, and the secondary witness could bring something else to light. It's not necessarily inconsistent or an omission where we don't ask that question. Nobody asks the same question about the video store, for example, or the second incident, Your Honor. When I present the case, Your Honor, I've asked Mr. Hoek to present his facts, and I ask different questions of the secondary witness. Your Honor, I didn't ask questions of the secondary witness regarding the video store, nor of the second incident. Neither did the court, neither did the trial attorney. Your Honor, there was no inconsistency regarding that. If they ---- No inconsistency on dates? No, Your Honor. I did not find that. Was that the finding of the IJ? Your Honor, she found that, but I didn't find it supported specifically in the record. And when I went through the dates that she stated, I didn't find any inconsistencies. Okay. You've got minus one minute. Do you want to save it for rebuttal? Yes, Your Honor. Thank you so much. I'll hear from the government. May it please the Court, I'm Teresa Donovan for the Attorney General. If I might start out by explaining just or addressing the Court's concern about the alteration. The writing was on the original document, not on the copy. There was some confusion there. Comparing ---- I'm sorry. So it was the original that was submitted to the application or the copy? The original letter allegedly from the BNP was submitted by Petitioner with his original asylum application. So this is 149? 149. That's correct, Your Honor. That's the one that contains the date? The writing, whatever that may be. The writing that looks like it might be a date? Yes, Your Honor. And then it's the copy that was submitted at the time of the hearing that on page 148 of the administrative record that does not contain writing. I don't understand. Oh, these are two copies of the same letter. It purported to be the very same letter at the time of the hearing. So the only difference between them is this scribbling up in the upper right-hand corner. Yes, Your Honor, which seems ---- Why is that material? Well, because, as Your Honor just said, it purports to be an exact duplicate or copy of an original letter. And there's no explanation why these are not identical copies. It's not really an answer to the question. Why is the addition of the scribbling, the unexplained addition of that scribbling material to the outcome of the case? Rather the omission. I think what you're claiming is that the date was removed. The ---- Well, I don't understand that. Well, what makes this material is the fact that Petitioner submitted a letter corroborating his claim of activities and membership in the BNP. And that was the letter with what we're going to call the date. Yes, Your Honor. That's the original. So the original is first submitted and it has the date. And then counsel doesn't know that it's in the file. So he submits a photocopy where the date is missing. Exactly, Your Honor. And at the time ---- And why is the absence of the date material or not? We would submit as material, Your Honor, because for one thing, when you submit to a court a copy of a document and it's not an exact duplicate of the original, that's problematic. Secondly, the purpose for introducing or submitting this letter goes to the heart of Petitioner's claim. And that is his claimed association with the BNP, the Bangladesh Nationalist Party. So that's a letter is significant. But why is the particular scribbling on the upper right hand corner significant to the weight that should be given to the letter? It doesn't go to the substance of the letter. Nothing goes. Nobody can figure out what it does anyway. Correct, Your Honor. So why is it material? Why is it significant? Because when a party offers a document to the court saying this is a copy of an original and it's not a copy, for some reason there's an unexplained discrepancy there, that's what makes it significant. It doesn't. Well, I think one can say it's suspicious, but then one has to look and see whether anything is gained or lost by the omission or the addition. So one says, well, it looks suspicious that the thing is missing. But, you know, so do we infer that this was removed for fraudulent reason? And nobody suggested a fraudulent reason. Why removal of the date would have helped or could have helped? No, Your Honor. In fact, this is one, I would say, one of the minor factors, specific and cogent reasons supporting the immigration judge's adverse credibility determination. This is a minor factor? This is one of several. What is the major factor that supports? Your Honor, I would submit there's two. The first being the inconsistent testimony between Petitioner and his wife regarding the time periods in which he was allegedly in hiding. Petitioner stated he was allegedly kidnapped, hospitalized for eight days, went home for a month, and then began his regular life, quote unquote, and resumed his political and business activities. On the other hand, his wife said he came home from the hospital. He was very scared, and he went into hiding seven or eight days that month. Next, Petitioner said, pardon me? He didn't stay home for a week after he came back from the hospital. She said he hid seven or eight days in that month he was home. Not consecutively, but he was so scared that he would go into hiding at times during that month. Where's the inconsistency? The inconsistency lies, Your Honor, in the fact that Petitioner said he resumed his regular life. He said, I was harassed, but nothing major happened. They give a very different view of this time period between February 1996, when there's an alleged kidnapping, and their departure for the United States in early July 1996. If I might say. I'm sorry, I've been listening, but I don't. What's the big difference? I still don't get it. Let me list another. It's not like she said he was in hiding, and he said, I was out partying and went to my job and hobnobbing with the premier. They both sound. Let me go on. Consistent, given human recollection and the passage of time, and that sort of tendency to blur. We would submit, Your Honor, that isn't the case. Petitioner said, I came home for a month. I was harassed a little. Nothing major happened. I resumed my regular life. On the other hand, his wife said he's he's very, very scared when he comes home, so much so that he hides seven or eight days that month. We would submit, Your Honor, that is an important inconsistency. So the inconsistency is he says, I resume my life. She says he hid seven or eight days. Yes, for this inconsistency, and the influence one could draw from that is that it's all a big fabrication, that there was no kidnapping. Well, what does let's say, in fact, there is an inconsistency here. What is the materiality? What? Why? Why is it the kind of inconsistency that makes a difference of undermines other things? We would submit, Your Honor, that it undermines petitioner's claim because this is a critical time period with regard to his claim because he's allegedly kidnapped, hospitalized for eight days. And this is the system that persists on that. Well, the kidnapping and the hospitalization, they don't disagree on that. No, Your Honor. Okay. They got that part right. That's right, Your Honor. And that's exactly the feeling. And then the discrepancy or the inconsistency is how they recall his reaction was to that. He says, I was okay. I was in my life. She said he went to hiding. That's one inconsistency. The other inconsistency does not strike me as a very significant inconsistency. Perhaps it's more a difference in perception. Well, maybe if we continue on with the other inconsistencies that might bolster this this concept of inconsistent testimony. For example, petitioner, I bet that if we had two witnesses that testified exactly the same, you'd be up here saying they were saying they were. Thank you. That's what I was looking for. They were coached and therefore they must be both liars because they are so consistent. Your Honor, I beg to disagree because we have not just a witness, but the wife of the witness and her testimony. Why don't you go ahead and go on and tell us other. Thank you. Other things in the petitioner stated explicitly. I testify, I hid for five weeks, two weeks before a June 12th, 1996 election and three weeks after that election. Very specific. He said he went into hiding on May 28th, 1996 after having participated in a demonstration for which he was later charged as being a terrorist. The police sought to arrest him. So he goes into hiding on May 28th. His testimony, again, is very explicit. That can be compared with his wife's testimony on that issue, which changed at least five times. That is those changed. Testimonies are recorded in respondents brief at page 33. Interestingly, in the reply brief. OK, I'm sorry, but how was the question? This is a different basis. She's unbelievable because she changed the story. But where's the inconsistency? Thank you. OK, we have the five weeks explicitly testified to by the petitioner. These are listed at page 33, Your Honor. I got page 33. Thank you. But what is inconsistency? Tell me where he said one thing and she said something inconsistent. All right. I mean, contradictory. Contradictory would be even better. Contradictory. Yes. Thank you, Your Honor. It is. I'm not telling you this. I know, but I appreciate the word, the term. The petitioner's wife testified her husband was no longer living at home right after the June 1996 election. That was an administrative record. Page 132. OK. Then she said, no, he went into hiding before the election. Again, on page 132. And then she says, and after the election. OK, those are coming together. Then she said he went into hiding. Those are not mutually inconsistent. No, no, it's developing. The testimony is developing. He went into hiding after the February 1996 kidnapping, but before the June 1996 election. Then he hid for seven or eight days in March. That would be the month following the hospitalization. Then she testified he remained in hiding after the alleged February 1996 kidnapping until they left Bangladesh. That's at the record, page 137, 138. You know, I'm looking at your page, but I really wish you would help me out by telling me the inconsistency or the contradiction. Mr. Hoke testified X. Madam Hoke testified not X. That would help me. You know, and so sort of picking your way through her testimony. Tell me where he said one thing and she said something that's contradictory. OK, you don't have to pick everything she said, just the one thing that's contradictory. So why don't you give me his thing and then her thing and show me where they are opposite, where they are mutually inconsistent. His thing is the explicit testimony regarding five weeks of hiding two weeks before the June 12th election, three weeks after. So he hid before and after the election, two before, three after. Yes, Your Honor. She says what that's contradictory to that. She said he hid after the alleged February 1996 kidnapping. She testified he hid for seven or eight days in March. She testified he went into hiding in April. She testified that he remained. I'm sorry. None of those things are at all contradictory to his testimony that he hid before and after the election. They're different. They deal with different time periods, but they're not contradictory. Why don't you show me where she says, you know, right before the election, right after the election, he was at home with us. Did she say something like that? I'm just asking. I don't know. That would be a contradiction. He says I was hiding. She says, no, he was home. The fact that she testified to his finding at different times made me reflect that she was asked different questions. Well, it's not necessarily a contradiction. Your Honor, we'd submit her testimony was very fluid and changed as she was being questioned. But that's a different issue. If you think that she ought to be disbelieved because her testimony is entirely inconsistent, we can talk about that. But that's a different basis in saying she ought to be disbelieved because her testimony contradicts her husband's. Or that both of us ought to be disbelieved because they are mutually contradictory. You may believe one and disbelieve the other and still have a different result in this case. Which reaches really the heart and soul of this case. And that is the standard of review here. If a petitioner can only show there's another plausible alternative explanation, that is insufficient to reverse this agency decision. Well, let's assume I find the petitioner credible across the board. I don't. He's straightforward. He uses proper English language. He's alert. He listens to the question. He answers it directly. I conclude that as an ALJ. I get a wife who's less educated, stammers a little bit, stutters around, needs a translator for part of it. Obvious confusion. I decided her testimony just is not completely credible. I don't know exactly where it's from. I'm going to believe the petitioner. I'm going to grant. Can I do that? Your Honor, as the immigration judge, you could have as the asylum officer. You could have. If the immigration judge goes through that exercise on the record and tells us this is exactly what he did or didn't do, then you have a rule. Right. But but your honor is on the Ninth Circuit Court of Appeals. And the standard of review here is not whether or not he's met his burden to establish asylum eligibility. I'm going to read the IJ's record of what the dispute is all about and why the credibility determination was made. Yes, you do that. And if it isn't sufficient, I can send it back. Oh, yes, your honor. I guess my point is. Petitioner's burden here is not establishing asylum eligibility. Petitioner's burden in this courtroom in this context is to establish that the evidence compels a contrary result. And if a reasonable fact finder might find petitioner credible or might find him not credible, this court must affirm the agency decision. When you go back to the letter and if you look at it with some integrity, it's making a statement in type type form about facts that exist. The date or the pencil change in no way affects the force of that letter to a reader. I don't care which copy you read. So why should that have any effect in terms of a credibility finding? Because, your honor, when a party purports to submit a copy of a document. And it is not an exact copy, but you don't claim it's fraudulent. No, your honor. Misleading the IJ. The facts are the same whether you look at copy A or copy B, 148 or 149. So what? Well, your honor, the interesting part about it. Petitioner never offered an explanation. In fact, when this discrepancy became apparent to the court, Petitioner's counsel said yes. And the signature seemed to be different. And the service said yes. And the ink seems to be different. But there was never an attempt by Petitioner to explain the. They don't look different to me either, your honor. But in the record. You clearly can't say the ink is different because you can't tell the ink from a photocopy. But on page 80. Well, let me ask you something. I think. Five. Exhausting. Four. The IJ makes a statement on 51. The court believes that the male respondent had engaged in inciting political violence. As a result of that, the government brought charges against him. Any evidence that he is engaged in inciting political evidence of political violence? Yes, your honor. And it comes directly from the respondent, the petitioner's testimony. What did he say? He. The we would submit, your honor, that the immigration judge's conclusion that petitioner fears prosecution and not persecution is established by petitioner's own testimony before the immigration judge. For example, he said he was charged with being a terrorist. As a result, he's engaged in political violence, inciting political violence. Well, if I could list these factors that that bear out, that conclusion is a reasonable one. This is charged by the new government that came in in June. Well, the as I understand it, the BNP is is now in power in Bangladesh. But the army league came in in June. Right. And they apparently this is intended to reflect a charge by them. And he was a political enemy. Yes. And he asserts that those were fraudulent charges and. And the. But where's the evidence that he engaged in political. Well, it's taking the content of his statements, that is, he played a leading role, a very important role in this demonstration that allegedly occurred on May 28th, 1996. He said that the police came and made a report because persons were injured at that demonstration in the police report. He was named as someone who was responsible for the demonstration. He said that his name appeared on a list of persons responsible for that demonstration. Persons who were injured in that demonstration named him, quote unquote, as a main defendant in a lawsuit. Notably, in the 1996 country reports, the State Department country reports, it stated the BNP activists used deadly force to disrupt opposition party gatherings. That's on page 191 of the administrative record, Your Honor. In other words, taken together, petitioner claiming to play a leading role. He's named in a police report. They're seeking to arrest him. Your Honor's point is well taken. Will the army lead one in June? We're talking about a demonstration in a police report written May 28th, two weeks earlier or whatever that would be. So, no, this seems like a bona fide charge. And that those things taken together support the immigration judge's conclusion that petitioner may well fear prosecution. Did she make the point that this is a case of prosecution rather than persecution? I don't find that in her holding. Well, Your Honor, in her decision, which you noted, she she says that and perhaps I'm saying prosecution and she didn't use that word. But she talks about political jealousy that Your Honor comes into her finding as to the fact that petitioner was not harmed on account of his persecution claim as opposed to the well-founded fear claim. Well, this all happened in May, June, but the torture occurred in February and there's no question, no dispute about that. The alleged torture, Your Honor. But her point there is it was not on account of one of the protected grounds under the statute. Thank you. Thank you. We'll give you a minute for a bottle if you wish to take it. OK, thank you, counsel. Case is signed. You will stand for a minute. The litigious Mr. Ashcroft keeps showing up in our cases. However, he always had to think I get.
judges: Beezer, Kozinski, Schwarzer